OPINION OF THE COURT
Joel K. Asarch, J.
There is an unmet need for legal representation of a large portion of the state’s population in civil proceedings. Despite laudable efforts by the practicing bar to provide free and reduced rate legal services to the public (pro bono publico), many people still cannot afford to obtain the assistance of counsel in civil cases. However, as the Ad Hoc Committee for Non-Lawyer Practice of the New York State Bar Association found, “[t]he employment of educated and trained legal assistants presents an opportunity to expand the public’s accessibility to legal services at a reduced cost while preserving attorneys’ time for attention to legal services which require the independent exercise of an attorney’s judgment” (Guidelines for Utilization by Lawyers of Service of Legal Assistants, NY St Bar Assn Subcomm on Legal Assistants at 1 [1997]).
To help in the delivery of “high quality, cost effective legal services to the public” (id.), paralegals work under the supervision of attorneys, who are fully responsible for such representation. The paralegal does not practice law — an “act requiring the exercise of ‘independent professional legal judgment’ ” (NY St Bar Assn Comm on Prof Ethics Op 304 [1973]). In fact, a traditional paralegal may not practice law (Judiciary Law §§ 478, 484).
When a paralegal declines to work under the direct supervision of an attorney, problems may occur. This small claims case, which the undersigned tried on April 9, 2002, emphasizes the problems involved.
Findings of Fact
The plaintiff had obtained a judgment against a debtor on November 14, 2001 for $1,472. When the plaintiff attempted to *630 enforce the judgment, he learned that there were two joint bank accounts at different banks in the names of the judgment debtor and his wife, for which the sheriffs department required a turnover order.
The plaintiff went to the defendant, “an independent paralegal” and president/sole shareholder of Accutech Consulting Group, Inc., and explained what he needed. He paid the defendant $45 for the services. Despite the defendant’s claim that she did not know what a turnover order was, she accepted the case and the fee.
The plaintiff alleged that the papers prepared by the defendant were deficient and, as a result, the “Sheriffs Department closed the case.” He sues to recover the amount of the judgment plus the fee paid to the defendant (which she admittedly would refund). In fact, by letter dated February 21, 2002, the defendant sent the plaintiff a check for $45 (which he denied receiving), refunding the $45 for the turnover order which “was executed in good faith by this office. You indicated an error and we did not ever refuse to make the correction. This is not a usual type of court order. In fact, the three attorneys that we did speak with about it understood the relevance, but had never heard of it or done such an order.” The defendant indicated that because the plaintiff had challenged the “integrity” of the defendant’s office, his business “will not be welcome here.”
The fact that the sheriffs department closed the case with respect to the two joint bank accounts does not mean the judgment is unenforceable. Rather, if docketed properly, the small claims judgment acts as a lien on real property. Further, the judgment is good for up to 20 years. The plaintiff has failed to prove that but for the defendant’s act or omission, he would have collected on the judgment (see, e.g., Davis v Klein, 224 AD2d 196 [1st Dept], affd 88 NY2d 1008 [1996]). There was no proof that the restraint was released from the bank accounts. Generally, restraining notices are good for one year (CPLR 5222 [a]). Accordingly, the plaintiff has failed to prove entitlement to recover the underlying judgment from the defendant.
However, just because the plaintiff cannot recover the amount of the judgment from the defendant does not end this court’s inquiry. The defendant testified that she’s a graduate from a paralegal certificate program and has been a paralegal for 13 years and she “help[s] a lot of people.”
In response to the court’s question: “Do you work under the authority of an attorney?” The defendant answered: “I’m an *631 independent. I assist the general public. I assist attorneys with work. And Mr. Sussman came to me of his own free will and asked me to do this work for him.”
To this court, there is a difference between assisting someone to fill out a form and preparing a form on a subject with which the “assistance” is unfamiliar. Instead of referring this plaintiff to an attorney, the defendant allegedly asked three attorneys about what a turnover order was (“none of them had ever heard of it”) and called the sheriffs office who informed her that “they needed something to direct the bank to research it’s files and find out the assets of the debtor.”

“So I prepared for Mr. Sussman the turn over order that you’re looking at.”

When asked by the court how she got the form, the defendant answered: “I patterned it based upon what I know of other orders petitioning money from the court.”
The petition stated, in part, “That on the 13th day of October, 2001 under the above stated index number, plaintiff was awarded a money judgment against ¡judgment-debtor] in the amount of one thousand four hundred forty-three and 00/100 dollars ($1,143.00) by the Hon. Alfred D. Cooper, Sr. (See copy of the judgment annexed hereto). The plaintiff caused the Nassau County Sheriff to serve a levy upon the first national bank of long island, on December 3, 2001, under Sheriffs File * * * in connection with defendant’s bank account numbered * * * That plaintiff requests said bank to research its files as to the assets of ¡judgment-debtor] in the aforesaid account and turn over to the sheriff of Nassau county the sum of $1,443.00 as and for satisfaction of judgment against the said ¡judgment-debtor].” The petition was signed and verified by the plaintiff herein.
At the bottom of the page was a “turn over order,” ordering “that the Bank of New York turn over to the Nassau County Sheriff the sum of ($1,443) plus accumulated interest.” There was a line for a District Court Judge’s signature. The papers were filed with the court, but no action was taken on them, as the clerk’s office properly rejected the papers.
Was the Defendant Practicing Law?
The American Bar Association has defined an independent paralegal as “a person who is not supervised by a lawyer, provides services to clients with regard to a process in which the law is involved, is not functioning at the time as a paralegal or a document preparer, and for whose work no lawyer is ac *632 countable” (Nonlawyer Practice in the United States: Summary of the Factual Record before the American Bar Association Commission on Nonlawyer Practice [1994]). However, New York State bar associations have not recognized the “legal technician/independent paralegal” for reasons obvious from this case — the independent paralegal, working without the supervision of an attorney, may cross the line between assisting a person in need to hurting a person in need through lack of knowledge and supervision (see e.g. New York County Lawyers Assn Ethics Comm Op 641 [1975]; Assn of Bar of City of NY Comm on Prof and Jud Ethics Op 1995-11 [“Supervision within the law firm thus is a key consideration”]).
Even the National Association of Legal Assistants, Inc. recognizes that a “legal assistant may perform any task which is properly delegated and supervised by an attorney, as long as the attorney is ultimately responsible to the client, maintains a direct relationship with the client, and assumes professional responsibility for work product” (Canon 2). “The prohibition against the practice of law by a layman is grounded in the need of the public for integrity and competence of those who undertake to render legal services. Because of the fiduciary and personal character of the lawyer-client relationship and the inherently complex nature of our legal system, the public can better be assured of the requisite responsibility and competence if the practice of law is confined to those who are subject to the requirements and regulations imposed upon members of the legal profession” (Matter of Stokes v Village of Wurtsboro, 123 Misc 2d 694, 695 [Sup Ct, Sullivan County 1984]).
A turnover proceeding is a special proceeding under article 52 of the CPLR. Preparation of legal papers (in this case a notice of petition and petition) and service of those papers must be in compliance with CPLR 5225 and/or 5227. A turnover proceeding is a common procedure in the collection of outstanding judgments.
The defendant has, in this court’s opinion, crossed the line between filling out forms and engaging in the practice of law by rendering legal services (Judiciary Law § 478; People v Jakubowitz, 184 Misc 2d 559 [Sup Ct, Bronx County 2000]). The defendant “was going to attempt to prepare an order that would hopefully affect the bank turning over the portion of the account of [the judgment-debtor]’s assets to Mr. Sussman on his judgment. That was the intention” (defendant’s testimony). “The practice of law involves the rendering of legal advice and *633 opinions directed to particular clients” (Matter of Rowe, 80 NY2d 336, 341-342 [1992] [citations omitted]). “[W]hen legal documents are prepared for a layman by a person in the business of preparing such documents, that person is practicing law whether the documents be prepared in conformity with the law of New York or any other law” (Matter of New York County Lawyers Assn., 3 NY2d 224, 229 [1957], appeal dismissed 355 US 604 [1958]). This court finds that the defendant used independent judgment on a subject with which she had insufficient knowledge. As indicated above, the defendant did not follow proper procedure with respect to the turnover proceeding. Failure to comply with CPLR 5225 and/or 5227 prevented the court from issuing a turnover order. Such document preparation was not “customary and innocuous practices” (Spivak v Sachs, 16 NY2d 163, 168 [1965]), nor were the turnover order documents the preparation of legal forms or text simply designed to say what the law is (see Matter of New York County Lawyers’ Assn. v Dacey, 21 NY2d 694 [1967]). Rather, the defendant herein purported to “give personal advice on a specific problem” with respect to the turnover proceeding vis-a-vis the plaintiffs judgment (Matter of New York County Lawyers’ Assn. v Dacey, 28 AD2d 161, 175 [Stevens, J., dissenting, adopted by Court of Appeals majority]).
Regardless of her intentions to help the plaintiff, this independent paralegal operated without the supervision of an attorney. She tried to create a legal document without the required knowledge, skill or training. As a result the plaintiff may have lost the ability to execute against two bank accounts. Just as a law school graduate, not admitted to practice law, cannot undertake to collect overdue accounts on behalf of prospective clients (see Nassau County Bar Assn Comm on Prof Ethics Op 3 [1980]), so is an independent paralegal barred from attempting to collect a judgment.
There is no doubt that the public needs assistance in navigating the court system. This is one reason for the Chief Judge’s work in creating offices for the self-represented in the courts. The hundreds of thousands of hours which the practicing bar devotes annually in voluntary pro bono services also go a long way to protecting the rights of those who cannot afford legal representation. However, the guidance of an attorney and his or her professional staff seems much preferable to an “independent paralegal” who has not gone through law school, has not passed the bar exam and who is not licensed in New York State (it should be noted that an attorney’s license to practice law is *634 subject to discipline if ethical standards are not met). Section 484 of the Judiciary Law is designed “to protect the public in this State from ‘the dangers of legal representation and advice given by persons not trained, examined and licensed for such work, whether they be laymen or lawyers from other jurisdictions’ ” (El Gemayel v Seaman, 72 NY2d 701, 705 [1988] [citation omitted]).
This court finds that the actions of the defendant constituted a deceptive act “likely to mislead a reasonable consumer acting reasonably under the circumstances” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 26 [1995]) and that “the acts or practices have a broader impact on consumers at large” (id. at 25). Such action by the defendant in accepting the task to prepare a turnover proceeding when she was not qualified or legally able to prepare the necessary papers violated section 349 of the General Business Law. Here, the court finds that the accepting of the assignment was misleading in a material respect to the consumer and that the consumer was injured — he was unable to collect his judgment from the two restrained bank accounts (see McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [Sup Ct, Nassau County 1987]). Accordingly, the court finds that the plaintiff is entitled to treble damages (General Business Law § 349 [h]) in the sum of $135.
In addition, the court is sending a copy of this decision to the New York State Attorney General’s Office for consideration in his discretion as to whether any action should be taken against the defendant pursuant to sections 476-a (1) and/or 485 of the Judiciary Law (see People v Romero, 91 NY2d 750 [1998]).
In summation, the court finds for the plaintiff against the defendant in the sum of $135 (see Spivak v Sachs, supra).