**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: KEVIN J. DOSER; In re:
LAURA E. DOSER,

JUDITH M. SCOTT,
                    *Appellant,*

v.

UNITED STATES TRUSTEE,
                    *Appellee.*

No. 03-35411

D.C. No.
CV-02-00327-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted
November 1, 2004—Seattle, Washington

Filed June 17, 2005

Before: Arthur L. Alarcón, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

7243

## COUNSEL

Charles F. Vihon, Western Springs, Illinois, for respondent-appellant Judith M. Scott.

R. Craig Green (briefed), Daniel Meron (argued), Department of Justice, Office of the General Counsel, Executive Office for U.S. Trustees, Washington, D.C., for movant-appellee United States Trustee.

## OPINION

RAWLINSON, Circuit Judge:

We hold today that when enacting 11 U.S.C. § 110,[1] Congress acted within its power under Article I, section 8, clause 4 of the United States Constitution. We further hold that § 110 is not unconstitutionally vague or overbroad and that it does not violate the First Amendment. Finally, we affirm the bankruptcy court's findings that Judith Scott violated § 110 by engaging in deceptive or unfair conduct and by charging excessive fees.[2] However, we express no opinion on whether Scott engaged in the unauthorized practice of law, whether the unauthorized practice of law itself is a violation of § 110, or whether the unauthorized practice of law constitutes fraudulent, deceptive or unfair conduct under § 110.

## I

## *BACKGROUND*

### A. Facts

Appellant Judith Scott is a franchisee of We The People Forms and Service Centers USA, Inc. (We the People or Franchisor).[3] Scott is not an attorney, but is a bankruptcy peti-

---

[1]11 U.S.C. § 110 has recently been amended. *See* Pub. L. No. 109-8, § 221, 119 Stat. 23, 59-62 (April 20, 2005). The amendments do not affect our analysis.

[2]Although Scott did not challenge the bankruptcy court's holding that she engaged in deceptive or unfair practices or that she charged an excessive fee, we may affirm on any ground supported by the record. *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999) (citation omitted).

[3]According to its website, We The People franchisees prepare legal documents and provide general legal information to assist individuals who wish to represent themselves *pro se* in certain types of legal proceedings. *See* www.wethepeopleusa.com. (last visited 06/06/05).

tion preparer (BPP) within the meaning of 11 U.S.C. § 110.[4] Kevin and Laura Doser's bankruptcy petition under Chapter 7 of the Bankruptcy Code was prepared by Scott. When a customer decides to use Scott's services, the customer signs a "purchase order," which the Dosers did. The customer must pay the "purchase fee" up front. Scott charges a flat fee, set by the Franchisor.

Once the customer has signed the purchase order and paid the fee, Scott provides the customer with certain materials, including a "Workbook," which contains questions for the customer to answer regarding the customer's assets, liabilities and financial affairs. According to Scott, it is her understanding that this Workbook seeks the same information as does the official bankruptcy petition forms, but is "simpler to answer." Once the customer has answered the questions, Scott checks the information for "completeness and legibility." Scott then faxes the document to a processing center in California operated by the Franchisor. The information is transferred to the required bankruptcy forms and e-mailed back to Scott, who prints a hard copy for the customer to sign. Scott then files the paperwork with the court and mails a copy to the customer.

In addition to the Workbook, Scott provides customers with a publication entitled "Bankruptcy Overview—Chapter 7 Idaho" (the Overview). The Overview, which is prepared by the Franchisor, contains a general discussion of Chapter 7 law and procedure, and offers helpful tips on representing oneself in bankruptcy proceedings. The Overview contains a question and answer section, including answers to some fairly specific technical questions. Finally, the Overview lists exemptions under Idaho law and the possible amount of the listed exemptions.

---

[4] " '[B]ankruptcy petition preparer' means a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1).

The Overview was reviewed and approved by John Connolly, an Idaho attorney employed by We the People, who acts as the supervising attorney for Scott's business. The Overview informs customers that they "enjoy the right, as a We the People customer, to chat with our Supervising Attorney, at no additional cost to you." Scott maintains that she informs her customers that the supervising attorney can only answer "general," not "specific" legal questions. Scott pays a monthly fee of $200 to We the People for Mr. Connolly's services.

## B. Procedural History

After the Dosers' bankruptcy petition was filed, the United States Bankruptcy Court for the District of Idaho issued a *sua sponte* Order to Show Cause (OTC) why Scott should not be found in violation of 11 U.S.C. § 110 with respect to the nature of the services she provided and the amount of compensation she received. The court held: (1) the OTC procedure satisfied due process; (2) Scott engaged in unfair and deceptive acts; (3) Scott engaged in the unauthorized practice of law; (4) Scott collected a fee for filing the petition in violation of law; and (5) the fee charged by Scott was excessive. *In re Doser*, 281 B.R. 292, 301, 303, 306, 310, 312, 314 (Bankr. D. Idaho 2002). The bankruptcy court fined Scott $10 for money received for filing the petition, and reduced Scott's fee by $114. *Id.* at 319.

Scott appealed the bankruptcy court's decision to the United States District Court for the District of Idaho. In addition to contesting the findings of the bankruptcy court, Scott also challenged the constitutionality of 11 U.S.C. § 110 as beyond the scope of Congress's power to regulate under the Bankruptcy Clause. Scott also attacked § 110 as being vague, overbroad and violative of Scott's due process and First Amendment rights. The district court denied Scott's appeal. *In re Doser*, 292 B.R. 652 (D. Idaho 2003).

Scott's present appeal raises three issues. Scott first challenges the district court's holding that § 110 is within Congress's power under the Bankruptcy Clause. Scott's second challenge is to the district court's holding that § 110 is not vague, overbroad or violative of Scott's First Amendment rights. Finally, Scott challenges the district court's holding that Scott engaged in the unauthorized practice of law.[5]

## II

### *STANDARD OF REVIEW*

"We independently review the bankruptcy court's determinations and do not give deference to the district court." *Taub v. Weber*, 366 F.3d 966, 968 (9th Cir. 2004) (citation omitted). The bankruptcy court's conclusions of law are reviewed *de novo*, and its findings of fact are reviewed for clear error. *United States v. Fowler (In re Fowler)*, 394 F.3d 1208, 1212 (9th Cir. 2005). "A challenge to the constitutionality of a statute also is reviewed de novo." *In re Adams*, 214 B.R. 212, 214 (9th Cir. B.A.P. 1997) (citation omitted).

## III

### *DISCUSSION*

### A. 11 U.S.C. § 110 is within Congress's Article I Powers

[1] Article I, Section 8, Clause 4 of the United States Constitution grants Congress the authority "to establish . . . uniform laws on the subject of Bankruptcies." U.S. Const., art. I, § 8, cl. 4. Congress is also bestowed the power to "make all Laws which shall be necessary and proper for carrying into

---

[5]Scott does not challenge on appeal the reduction of her fees, or the conclusion that she engaged in fraudulent, deceptive, or unfair conduct.

Execution" its granted authority. U.S. Const., Art. I, § 8, cl. 18.

**[2]** Section 110 was added to the Bankruptcy Code to create a set of standards and accompanying penalties to regulate bankruptcy petition preparers, who are not employed or supervised by attorneys and who had proliferated across the country, often taking advantage of poor and non-English speaking debtors. 140 Cong. Rec. H10,770 (October 4, 1994).

Scott contends that § 110 exceeds the scope of Congress's enumerated power under the Bankruptcy Clause. Scott relies on language from the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982), which states that "the restructuring of debtor-creditor relations . . . is at the core of the federal bankruptcy power . . . ." However, Scott's reliance on *Northern Pipeline* is misplaced. That case dealt with the constitutionality of granting bankruptcy judges the power to hear cases generally within the ambit of Article III courts, and not with Congress's power under the Bankruptcy Clause to enact bankruptcy laws. *See Northern Pipeline*, 458 U.S. at 52.

The quoted statement was made in the context of resolving whether the Bankruptcy Reform Act of 1978's broad grant of jurisdiction to bankruptcy courts "unconstitutionally conferred Article III judicial power" upon non-Article III judges. *Id.* at 56-57. In holding the Bankruptcy Reform Act unconstitutional, the Supreme Court characterized the Act as containing "unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Article III courts." *Id.* at 84. The encroachment conclusion flowed from the jurisdictional grant of authority to bankruptcy courts to decide "suits to recover accounts, controversies involving exempt property, actions to avoid transfers and payments as preferences or fraudulent conveyances, and causes of action owned by the debtor at the time of the petition for bankruptcy . . . [including] claims based on state law as well as those

based on federal law." *Id*. at 54 (citation omitted). Critical to the Court's conclusion was that the bankruptcy court's jurisdiction was co-extensive with that of a district court. *Id*. at 54, n.3.

**[3]** Nowhere in *Northern Pipeline* did the Court limit Congress's substantive power under the Bankruptcy Clause to the restructuring of debtor-creditor relations. In fact, the scope of Congress's power under the Bankruptcy Clause has been recognized as broad. *See Blanchette v. Conn. Gen. Insur. Corps.*, 419 U.S. 102, 154 (1974). "From the beginning, the tendency of legislation and of judicial interpretation has been uniformly in the direction of progressive liberalization in respect of the operation of the bankruptcy power." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co.,* 294 U.S. 648, 668 (1935).

**[4]** Use of the expansive power is targeted toward affording debtors a fresh start. *See Sliney v. Battley (In re Schmitz)*, 270 F.3d 1254, 1258 (9th Cir. 2001). Before a debtor can seek that fresh start, however, the debtor must first file a petition with the clerk of the court. 11 U.S.C. § 302. The filing of the petition in bankruptcy is significant because it "triggers an automatic stay of actions against the debtor, the creation of an estate, and the appointment of a trustee." *Leonard v. St. Rose Dominican Hosp. (In re Majewski)*, 310 F.3d 653, 656 (9th Cir. 2002) (citation omitted). "The petition is essential to the proper operation of the bankruptcy process, and all parties suffer if a petition is improperly prepared." *In re Moore*, 283 B.R. 852, 857 (Bankr. E.D.N.C. 2002).

**[5]** Because of the importance of the petition and schedule in the bankruptcy process, we hold that it is within the meaning of "the subject of Bankruptcy" and within Congress's power to pass uniform laws governing those persons wishing to prepare such documents. Even if not squarely within the meaning of "the subject of Bankruptcies," passing uniform laws for the protection of debtors during the process of pre-

paring the bankruptcy petition is eminently "necessary and proper" to effectuate Congress's power under the Bankruptcy Clause.

### B. Section 110 is not vague or overbroad and does not violate Scott's First Amendment rights.

**[6]** Scott contends that subsections 110(h), 110(i), and 110(j) are vague and overbroad because they fail to provide adequate notice of the conduct to be sanctioned or to provide guidance to a court which must enforce the mandates of the statute. As such, Scott argues that the statute violates her First Amendment rights. A statute is vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) (citation omitted). The statute defines a bankruptcy petition preparer as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). Thus, it is clear to whom the provisions of the statute apply and anyone performing the services of a BPP are on notice of what conduct is forbidden by statute.

**[7]** The specific subsections of which Scott complains are similarly direct. Scott contends that subsection 110(h) is vague because the statute contains no frame of reference against which to measure what fee would be excessive. Subsection 110(h)(2) states that "[t]he court shall disallow . . . any fee . . . found to be in excess of the value of services rendered for the documents prepared." A person of ordinary intelligence would know when a fee is excessive when compared to the limited services that may be permissibly performed by a BPP. Because a BPP can perform "only the modest service of transcribing or typing bankruptcy forms that the debtor alone must prepare without assistance," a BPP may only charge "what professional typists or word processors would charge." *In re Bush*, 275 B.R. 69, 84, 85 (Bankr. D. Idaho 2002).

**[8]** Subsection 110(i) provides for damages if a bankruptcy petition preparer engages in "any fraudulent, unfair, or deceptive act . . . " 11 U.S.C. § 110(i)(1). Subsection 110(j) allows the trustee, a creditor, or the United States Trustee to enjoin a bankruptcy petition preparer from engaging in "any other fraudulent, unfair or deceptive conduct . . . ." *Id.* at § 110(j)(2)(A)(i)(III). Scott criticizes these subsections as vague because no guidance is given to help identify what would constitute fraudulent, unfair or deceptive acts or conduct. However, the terms "fraudulent," "unfair," and "deceptive" are used in numerous federal statutes and regulations and have been consistently upheld against vagueness challenges. *See, e.g., Martini v. We the People Forms & Svc. Ctrs. USA, Inc. (In re Barcelo)*, 313 B.R. 135, 145 (Bankr. E.D.N.Y. 2004); *see also* 8 U.S.C. § 1101(a)(43)(M)(i) (an " 'aggravated felony' . . . includes an offense that—involves fraud or deceit . . ."); 17 C.F.R. § 240.10b-5(c) ("It shall be unlawful for any person . . . [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person . . ."); 49 U.S.C. § 41712(a) ("[T]he Secretary may investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice . . .").

**[9]** Scott further contends that § 110 violates her First Amendment rights because it restricts the information she can communicate to her customers. She argues that enforcement of § 110 results in a lack of access to literature that provides general information about bankruptcy. However, the statute is aimed at Scott's conduct as a BPP in preparing a bankruptcy petition, not at this distribution of literature. *See Ferm v. United States Trustee (In re Crowe)*, 243 B.R. 43, 50 (9th Cir. BAP 2000).

**[10]** Even assuming § 110 regulates Scott's speech, it does not infringe on her First Amendment rights. Commercial speech is afforded less protection than other forms of protected expression. *Cent. Hudson Gas & Elec. Corp. v. Pub.*

*Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980). The Court in *Central Hudson* created a four-part test to evaluate the protection due commercial speech:

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566. Because the commercial activity must be lawful and not misleading, the State may, without further justification, ban commercial expression that is fraudulent or deceptive. *Edenfield v. Fane*, 507 U.S. 761, 768-69 (1993).

Assuming, without deciding, that some truthful and non-misleading speech could be swept up by the prohibition against fraudulent and deceptive speech, the remainder of the *Central Hudson* test must be considered. *Edenfield*, 597 U.S. at 769. The government has a substantial interest in protecting *pro se* debtors from fraudulent and deceptive practices of non-attorneys who prepare bankruptcy petitions. *See* 140 Cong. Rec. H 10,770 (discussing the proliferation of BPPs). The statute directly advances that interest because it specifically prohibits fraudulent and deceptive acts by bankruptcy petition preparers and only in the narrow context of the preparation of bankruptcy petitions.

**[11]** After considering the *Central Hudson* factors, we hold that § 110 is not vague or overbroad and does not violate the First Amendment.

### C.   Scott's violations of 11 U.S.C. § 110

#### 1.   Scott engaged in fraudulent, deceptive, and unfair practices

Subsection 110(i)(1) of 11 U.S.C. § 110 states that if the district court finds that a BPP has engaged in fraudulent, deceptive or unfair acts or conduct, the district court shall, on a motion of the debtor, trustee, or a creditor, order that the BPP pay damages as set forth in that subsection. 11 U.S.C. § 110(i)(1). A finding of fraudulent, deceptive, or unfair acts or conduct also exposes a BPP to suit from the United States trustee for civil or injunctive relief. 11 U.S.C. § 110(j)(1).

In this case, the bankruptcy court held that by offering the services of a "supervising attorney," Scott engaged in deceptive and unfair practices in violation of § 110. *In re Doser*, 281 B.R. at 306. The supervising attorney is selected and paid by the Franchisor and does not represent Scott or her customers. *Id.* at 305. Yet, Scott personally informed her customers that the supervising attorney was available to answer questions the customers might have. *Id.* In addition, Scott and the Franchisor "hype the availability of the supervising attorney as an advantage to customers who deal with We the People as compared to other BPPs." *Id.* The bankruptcy court found that this arrangement misled Scott's customers into believing that Scott's services were more beneficial and reliable than other BPPs. *Id.*

**[12]** As the bankruptcy court noted, there was no real advantage to having the supervising attorney review the forms used by Scott to obtain information from her customers. *Id.* Forms used by any BPP must be consistent in content and format to the Official Forms as prescribed by the Judicial Conference of the United States. *Id.*; Fed. R. Bankr. P. 9009. The forms used by a BPP either comply with the Official Forms or they do not. Unless the supervising attorney does more, a

possibility Scott denies, there is no advantage to having him available merely to review the forms. *Id.*

**[13]** The bankruptcy court also found no advantage to having the supervising attorney available to answer "general" legal questions. *Id.* at 306. We agree. Scott acknowledges that the supervising attorney is unauthorized to answer specific legal questions. Essentially then, the supervising attorney is permitted to give only the same advice a lay person is permitted to give. Unless the attorney is exceeding this role, there is no advantage to having the attorney available to answer "general" questions. *Id.* Finally, although Scott informed her customers that the availability of the supervising attorney is an advantage to them, Scott did not inform her customers that the supervising attorney was not *their* lawyer and that they should not rely on his advice. *Id.*

**[14]** The bankruptcy court also held that Scott engaged in deceptive and unfair practices by providing her customers with the Overview and the Workbook. *Id.* at 306-10. For example, the bankruptcy court found the Overview to be deceptive because, while it attempts to advise non-lawyers about a complex area of law, it provides a summary of Chapter 7 only. *Id.* at 307. This potentially deceived customers into believing that the content of the summary is all they need to know. *Id.* The Overview fails to mention the option of filing a petition under Chapter 13, which in some cases could be more beneficial than a Chapter 7 filing. *Id.* Finally, the Overview states that all debts are discharged as a general rule. It then lists some of the exceptions to that rule. However, we agree with the district court that the Overview does not list all the exceptions, and a potential debtor might be deceived into thinking that his or her particular debt will be discharged when in fact it will not.

As for the Workbook, the bankruptcy court found that although the substance of the forms comes close to mirroring the Official Forms, certain terms are changed or explained in

order to simplify the process. *Id*. at 309. However, the added terms and explanations are not entirely accurate and could potentially cause a debtor prejudice. *Id.* at 309-10. Therefore, its use amounts to an unfair and deceptive practice.

**[15]** The bankruptcy court's conclusion that Scott engaged in deceptive and unfair practices by informing her customers that the supervising attorney reviews forms and is available to answer questions was not erroneous. Similarly, the bankruptcy court's determination that use of the Overview and Workbook amounted to a deceptive and unfair practice was not erroneous. For the reasons stated by the bankruptcy court and discussed above, Scott's actions were likely to mislead the users of her service, and thus violated § 110.

## 2.    Excessive fees charged by Scott

Section 110 states that a court "shall disallow and order the immediate turnover to the bankruptcy trustee of any [BPP] fee . . . found to be in excess of the value of the services rendered for the documents prepared." 11 U.S.C. § 110(h)(2). The bankruptcy court held that the fee Scott charged the Dosers was excessive and ordered Scott to refund $114 of the $214 fee she collected. *Id.* at 319. We agree.

**[16]** In *In re Bush*, the bankruptcy court held that when determining appropriate fees for a BPP, "the proper reference point is what professional typists or word processors would charge." *In re Bush*, 275 B.R. at 85. This is because, as the court noted, a BPP can perform "only the modest service of transcribing or typing bankruptcy forms that the debtors alone must prepare without assistance" and "other sorts of services are improper, and those services can *perforce* not be compensated." *Id*. at 84. (emphasis in the original).

**[17]** The bankruptcy court described the Dosers' bankruptcy as "a simple, straightforward consumer Chapter 7 case" and that "[f]ew Chapter 7 cases will involve a simpler

set of bankruptcy paperwork." *In re Doser*, 281 B.R. at 314. Thus, the court found that $100 would be a reasonable fee for services Scott provided. *Id.* at 319. The fee included $30 per hour for three hours of preparing the documents, $7.00 for copy costs, and $3.00 for postage. *Id.* at 318. Despite the additional benefits Scott claims her service offered, "[n]o additional compensation [was] justified nor available under § 110." *Id.*[6]

## IV

## *CONCLUSION*

**[18]** We hold that 11 U.S.C. § 110 was enacted within Congress's power under the Bankruptcy Clause. We further hold that § 110 is not unconstitutionally vague or overbroad and does not violate the First Amendment. Finally, we affirm the bankruptcy court's finding that Scott violated § 110 by engaging in deceptive or unfair acts and by charging excessive fees.

**AFFIRMED.**

---

[6]Because we uphold the findings that Scott engaged in fraudulent, deceptive, and unfair practices, and charged excessive fees, we need not and do not express any opinion on whether Scott's service constitutes the unauthorized practice of law. Nor do we express any opinion on whether the unauthorized practice of law is itself a violation of § 110, or whether the unauthorized practice of law *per se* constitutes fraudulent, deceptive or unfair acts or conduct.