### In re TOMLINSON.

### Civ.A. No. CV–05–4271 (DGT).

United States District Court, E.D. New York.

April 19, 2006.

---

David Jon Doyaga, Doyaga & Schaefer, Brooklyn, NY, for Appellant.

Charles F. Vihon, Western Springs, IL, Richard Lubetzky, Los Angeles, CA, Deborah Hrbek, New York, NY, for Appellee.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

Doreen Blackwood Tomlinson ("Tomlinson") and the Chapter 7 Trustee of her estate ("Trustee") have made a joint motion to withdraw the reference of this bankruptcy case from the bankruptcy court to the district court in order to enforce two of the bankruptcy court's orders. *See* 11 U.S.C. § 110(i)(1) ("if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court . . ."").

These orders determined and certified to the district court that Tomlinson's bankruptcy petition preparers, We the People of Brooklyn (doing business as We the People—Forrest Hills) (hereinafter We the People of Brooklyn), We the People USA, Inc. (also known as We the People Forms and Service Centers USA, Inc.) (hereinafter "We the People USA") and Tiffany Thomas (collectively "bankruptcy petition preparers"), violated 11 U.S.C. § 110(h)(2), and thereby owe damages and fees. The bankruptcy petition preparers have opposed these motions, challenging the court's jurisdiction over We the People USA, the amount of damages, the amount of attorneys' fees and the legal and factual underpinnings of the decisions.

## Background

### (1)

The debtor Doreen Blackwood Tomlinson and the trustee of her estate filed a joint motion against Tomlinson's bankruptcy petition preparers, claiming that they violated 11 U.S.C. § 110. The following facts are from two hearings before the bankruptcy court and, unless otherwise noted, are undisputed.

In 2004, Tomlinson decided to file for bankruptcy using the services of We the People of Brooklyn, a bankruptcy petition preparer and franchisee of We the People USA. Hr'g Tr. 47, Feb. 28, 2005; Hr'g Tr. 78, Apr. 11, 2005. The franchiser and franchisee worked in conjunction to prepare their customers' bankruptcy petitions, including Tomlinson's petition. After the information about Tomlinson's bankruptcy was collected by We the People of Brooklyn, We the People USA typed the petition. Hr'g Tr. 67, Apr. 11, 2005.

Tomlinson first learned of both entities' services through advertisements on television, in the newspaper and from the sign on the company's door. Hr'g Tr. 47, Feb. 28, 2005. These advertisements stated

that the fee to prepare bankruptcy papers was $199. *Id.*

Tomlinson was assisted at the Brooklyn location by two of the company's employees: Derek Porter and Tiffany Thomas. *Id.* at 46. She initially met with Porter who collected her deposit and informed her of an extra surcharge if she did not file her petition within a certain amount of time. She met with Thomas later to ask questions about her bankruptcy petition. Both of these employees had quit their jobs at the company by the time of the first hearing on February 28, 2005 and neither testified at either hearing. *Id.* at 64.

In addition to collecting her deposit, Porter also gave Tomlinson two publications by We the People: a pamphlet titled "An Overview of Bankruptcy" ("Bankruptcy Overview") and "The We the People Customer Information Workbook" ("Workbook"). Hr'g Tr. 36–38, Apr. 11, 2005; Resp't's Ex. B; Resp't's Ex. A. The Bankruptcy Overview described Chapter 7 bankruptcy in detail, then briefly described Chapter 13 bankruptcy, explaining that We the People does not assist with Chapter 13 filings. Resp't's Ex. B. The overview recommends that the reader speak with his or her own attorney if he or she has questions and also reminds the reader that he or she "enjoy[s] the right as a WE THE PEOPLE customer, to chat with our Supervising Attorney, at no additional cost[ ]." *Id.* The Bankruptcy Overview itself reiterates that the cost of the preparation of the petition is $199. *Id.*

The Bankruptcy Overview also contains a table titled "New York Exemption Table" which is used in conjunction with the Workbook. *Id.* The Workbook is a 35–page questionnaire requesting information that We the People will then apply to the customer's bankruptcy petition. Resp't's A. The exemption table describes types of property, associates this property with the New York statute exempting it and then gives a code for each type of property exemption. Resp't's B. The petitioner is instructed to read this table and then write down the code correlating with the statute in the Workbook. *Id.* For example, in Tomlinson's Workbook, she provided specific information about a checking account, including who owned it, the value, where it was located and whether it fit one of the exemptions listed in the Bankruptcy Overview. Resp't's A.

We the People USA took the information that Tomlinson provided in the Workbook and applied it to those forms which listed exempt property (Schedule C). Hr'g Tr. 36–38, 67, Apr. 11, 2005. The language in the Workbook is not identical to the language in the bankruptcy forms. Therefore, Tomlinson did not fill in the Schedule C form herself, but instead trusted that We the People USA completed it correctly based on her answers in the Workbook.

Tomlinson claims that she had trouble understanding the forms in the Workbook, so she returned to the We the People of Brooklyn office where Thomas filled out the forms for her. *Id.* at 28, 37, 68. In addition, Thomas told Tomlinson which of her properties were exempt under the statute. *Id.* at 29. During this session, Tomlinson explained that she paid her sister $120 per month for a loan. *Id.* at 31. Tomlinson claims that Thomas told her that she could not list her sister as a creditor and did not include this debt in the bankruptcy forms. *Id.* at 32. Tomlinson claims that she took this advice, which ultimately resulted in an error on her petition.

The bankruptcy petition preparers jointly contest Tomlinson's claim that Thomas gave this advice. They claim that Thomas would not have given Tomlinson any legal advice. The owner and manager of We

the People of Brooklyn testified that Thomas, like other employees, was trained to tell customers to contact an attorney with specific legal questions, or speak to the office's supervising attorney if they had general legal questions. *Id.* at 95, 121. However, Thomas, herself, did not testify at the hearing. The bankruptcy petition preparers also point to Tomlinson's contract as evidence that Tomlinson did not receive legal advice because the contract specifically stated that the employees were not attorneys and could not give her legal advice. *Id.* at 35–36.

Both sides also disagree about Thomas' explanation of the fees charged for We the People's services. When Tomlinson looked at her completed statement of financial affairs, she saw that the cost of preparation was listed $229, rather than the $199 advertised price. Hr'g Tr. 50, Feb. 28, 2005. Tomlinson claims that Thomas told her there was a $15 fee for the process server and a $15 fee for copying her documents. *Id.* However, there was no process server used in her case and, in fact, process servers are not used in *any* similar bankruptcy matters. *Id.* at 51. Tomlinson alleges that Thomas told her it was the company policy to charge this amount despite the fact that no process server was used. *Id.* Tomlinson further states that she did not challenge the extra fee because Porter had told her that she had to complete the filing within a certain time period or she would lose her deposit and incur additional fees for retyping the documents. *Id.* at 53–54. Rather than risk these penalties, she paid the extra $30 without further complaint. *Id.*

The bankruptcy petition preparers argue that the company's actual policy was that the additional fees were optional and that while the process server was no longer in use, the fee covered other prepara-tion costs. *Id.* at 75; Hr'g Tr. 115, Apr. 11, 2005.

### (2)

On January 13, 2005, Tomlinson and the trustee of the estate filed a joint motion for an order that the bankruptcy petition preparers disgorge fees and that the bankruptcy court certify to the district court that the petition preparers had engaged in fraudulent, unfair or deceptive acts.

Bankruptcy Judge Carla E. Craig held two hearings, each resulting in an order finding that the bankruptcy petition preparers committed fraudulent, unfair or deceptive acts.

In the first order, dated March 15, 2005, the bankruptcy court made several findings. The court specifically held that all of the petition preparers had been properly served, a fact contested by We the People USA the owner of the franchise. The court also found that Tomlinson was credible and had no choice other than to pay the additional $30, $15 of which was a contrived fee for a non-existent process server. Finally, the court found, and certified to the district court, that the bankruptcy petition preparers engaged in an unfair, fraudulent and deceptive act within the meaning of 11 U.S.C. § 110(i) in that they charged Tomlinson for a process server when none was needed.

The second order, dated June 13, 2005, made more extensive findings. It found, and certified to the district court, that the bankruptcy petition preparers committed the following fraudulent, unfair and deceptive acts under the code:

(1) engaging in the unauthorized practice of law by giving Tomlinson a pamphlet on Chapter 7 bankruptcy and forms which chose her exemptions, rather than allowing her to make an independent determination of which exemptions to claim;

(2) engaging in the unauthorized practice of law in that an employee of the petition preparers told Tomlinson that she should not list her sister as a creditor on her bankruptcy schedules;

(3) representing that they were not giving legal advice, when they in fact had been;

(4) advertising a $199 fee, when the fee was in fact $229;

(5) providing misleading materials that falsely state that the fee over $199 was optional.

*In re Tomlinson,* No. 04–23700 (Bankr. E.D.N.Y. June 13, 2005) (order certifying five deceptive acts to the district court).

In addition to the certification, the bankruptcy court also ordered the petition preparers to refund the full fee of $229 to Tomlinson because their incorrect advice regarding the process server and her sister's loan rendered their services useless. See 11 U.S.C. § 110(h)(2) ("The [bankruptcy] court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee ... found to be in excess of the value of services rendered for the documents prepared.").

Pursuant to 11 U.S.C. § 110(i)(1),[1] Tomlinson seeks $420 of actual damages due to lost wages for time she took time off of work for the hearings and the deposition, $2000 for each of the six deceptive acts found by the Bankruptcy Judge, and attorney's fees in the amount of $3,240. Under the same section, the trustee who acted as his own counsel, seeks $16,692.50 for attorney's fees and an additional $1,000 for each of the six deceptive acts.

The bankruptcy petition preparers challenge both the proposed award and the decision of the bankruptcy court. They argue: (1) the evidence of the company's habit or business practice showed that the company and its agent did not give legal advice; (2) the written materials did not constitute the unauthorized practice of law; (3) the $30 fee was optional and $15 of the fee was for a service equal to the amount charged; (4) We the People USA was not a party before the bankruptcy court and (5) the requested fees and awards are excessive. Each argument is addressed in turn below.

## Discussion

### (1)

In 1994, Congress passed 11 U.S.C. § 110 "to remedy what was perceived to be widespread fraud and unauthorized practice of law by nonattorneys who prepared bankruptcy documents for consumer debtors." 2 *Collier on Bankruptcy,* ¶ 110.01 (15th ed. rev.2004) (citing *Ferm v. United States Trustee (In re Crawford),* 194 F.3d 954 (9th Cir.1999), *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000)). The act strictly restricts the participation of bankruptcy petition preparers, specifically providing for damages for "any fraudulent, unfair, or deceptive act." 11 § 110(h)(1). One often cited court described their role:

A bankruptcy petition preparer can meet a prospective debtor, provide forms or questionnaires for the debtor to complete without any assistance from

---

1. While under the new version of the code, the bankruptcy court may assess these fines and damages and no certification to the district court is necessary, this case was filed under the prior version of the statute and these fines must be determined by a district court. *See* 11 U.S.C. § 101 (making the 2005 amendments effective for cases filed after 180 days after April 20, 2005). Tomlinson originally filed for bankruptcy on September 27, 2004 and filed this motion on August 12, 2005 placing her squarely within the prior version of the statute.

the bankruptcy petition preparer, transcribe the information supplied by the prospective debtor on the applicable bankruptcy forms without change, correction, or alteration, copy the pleadings, and gather all necessary related pleadings to file with the bankruptcy court. The bankruptcy petition preparer cannot improve upon the prospective debtor's answers, cannot counsel the client on options, and cannot otherwise provide legal assistance to the prospective debtor, directly or indirectly.

*In re Landry*, 268 B.R. 301, (Bankr. M.D.Fla.2001), *cited in In re Gaftick*, 333 B.R. 177, 184 (Bankr.E.D.N.Y.2005).

When reviewing bankruptcy court decisions on appeal, findings of fact are accepted unless clearly erroneous but conclusions of law are reviewed de novo. Fed. R. Bankr.P. Rule 8013, 11 U.S.C.; *In re Dawnwood Properties/78*, 209 F.3d 114, 116 (2d Cir.2000); *In re Casse*, 198 F.3d 327, 332 (2d Cir.1999).

### a. Unauthorized Practice of Law

First, the bankruptcy petition preparers argue that the bankruptcy court erred in deciding that they violated the code by giving legal advice when Thomas told Tomlinson not to include the loan from her sister on the forms. The bankruptcy judge based her decision on Tomlinson's credible testimony that she received this advice from Thomas.

The bankruptcy petition preparers argue that the bankruptcy judge should have relied on Thomas' supervisor's testimony that the company's business practice was not to give such advice. The bankruptcy petition preparers, relying on Rule 406 of the Federal Rules of Evidence, argue that evidence of such a practice must be refuted with evidence that the business did not comply with that practice on the specific occasion in question.

This argument is not supported by Rule 406, which only states that business practice may be relevant and, therefore, be admissible. Fed.R.Evid. 406 ("Evidence of ... the routine practice of an organization ... is relevant to prove that the conduct of ... the organization on a particular occasion was in conformity with the habit or routine practice."). The only case that the bankruptcy petition preparers cite on this issue does not support their proposition either. *Rowley v. American Airlines*, 885 F.Supp. 1406 (D.Or.1995), was decided on summary judgment, holding that the business practice was relevant and granting plaintiff discovery to impeach the witnesses testifying to the practice.

In this case, the bankruptcy court, like the court in *Rowley*, admitted evidence of a business practice. The defendants were allowed to present the testimony of Thomas' supervisor who stated that Thomas was trained not to give legal advice and that he observed her performing her job appropriately in the past. However, this evidence was not conclusive in the face of other relevant evidence: Tomlinson's testimony. Tomlinson testified that Thomas had, in fact, given such legal advice. Her testimony directly contradicted the company's claimed business practice.

The bankruptcy judge specifically stated that she found Tomlinson's testimony credible and that she did not find the company's representative to be credible. The bankruptcy court's factual findings are upheld unless they are found to be clearly erroneous. See *In re Dawnwood Properties/78*, 209 F.3d at 116; *In re Casse*, 198 F.3d at 332. The bankruptcy petition preparers have offered no indication that the bankruptcy judge's credibility determination was clearly erroneous, nor does the record so indicate. Therefore, the bankruptcy court's finding of fact stands.

■ This finding of fact supports the bankruptcy court's finding of law that Thomas' advice about the debt to Tomlinson's sister and about how to complete the Workbook constituted the unauthorized practice of law and therefore violated the statute. Although section 110 does not explicitly prohibit the unauthorized practice of law, such unauthorized practice, as defined by state law, has been found to be a "fraudulent, deceptive, or unfair practice." *In re Gaftick,* 333 B.R. 177, 186 (Bankr.E.D.N.Y.2005); *In re McDonald,* 318 B.R. 37 (Bankr.E.D.N.Y.2004); *see also* 11 U.S.C. § 110(k) ("Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law."). The bankruptcy petition preparers violated New York state's rules against the unauthorized practice of law by telling Tomlinson that she could not include her debt to her sister as an exemption and by filling out her Workbook. NY Jud. Law § 478 (McKinney 2006); *Spivak v. Sachs,* 16 N.Y.2d 163, 168, 211 N.E.2d 329, 331, 263 N.Y.S.2d 953, 956 (1965) ("The statute aims to protect our citizens against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work[.]"); *Sussman v. Grado,* 192 Misc.2d 628, 633, 746 N.Y.S.2d 548, 553 (Nassau County Ct.2002) (finding that a paralegal violated the statute by drafting a petition for a turnover without the supervision of an attorney). The bankruptcy judge's determination that Thomas' legal advice to Tomlinson was a violation of the code is, therefore, upheld.

**b. Bankruptcy Overview and Workbook**

■ The second issue on appeal is whether the bankruptcy petition preparers violated section 110 because they gave Tomlinson the Bankruptcy Overview and Workbook and then based her application on how she completed the Workbook. In New York it is not a violation of the unauthorized practice of law to provide legal material, or even specific forms for legal use as long as there is no attorney-client relationship. *See, e.g. In re N.Y. County Lawyers' Ass'n,* 21 N.Y.2d 694, 694, 234 N.E.2d 459, 459, 287 N.Y.S.2d 422, 423 (1967) (finding that "the publication of a legal text which purported to say what the law is ... and that the conjoining of the text and the forms with advice as to how the forms should be filled out does not constitute the unauthorized practice of law."); *State v. Winder,* 42 A.D.2d 1039, 1039, 348 N.Y.S.2d 270, 272 (4th Dept. 1973) (finding that a kit of will forms did not violate New York state's prohibition against the unauthorized practice of law).

■ Even though the forms themselves are not a violation of the state regulation of the practice of law, federal courts have found that these same materials have violated the bankruptcy code basing the analysis on the federal statute itself. See *In re Doser,* 412 F.3d 1056, 1065 (9th Cir. 2005) (finding We the People's Overview and Workbook in violation of the statute because they only provided a summary of Chapter 7 "potentially [deceiving] customers into believing that the content of the summary is all they need to know" and that the Workbook had "certain terms ... [that were] not entirely accurate and could potentially cause a debtor prejudice"). We the People's Overview has been universally rejected as violating the statute. *See, e.g. In re Gaftick,* 333 B.R. at 188 (collecting cases); *see also Barcelo v. We the People Forms and Service Centers, U.S.A.,* No. 04–01117, 2005 WL 3007104 (Bankr. E.D.N.Y. Oct.24, 2005) (endorsing a stipulation of final judgment preventing the distribution of "any handouts, including ... step-by-step guides to bankruptcy,

**408**

bankruptcy workbooks, exemption sheets, bankruptcy overviews and court lists").

Furthermore, in this instance, the bankruptcy petition preparers did more than merely provide these materials: they applied the information Tomlinson provided in the Workbook to her bankruptcy forms. The Workbook was not identical to the bankruptcy forms, so the bankruptcy petition preparers had to take the raw information she provided in the Workbook and then apply it to the forms. Furthermore, Bankruptcy Overview merely summarized the statute, creating the possibility of misinterpretation. See *In re Doser*, 412 F.3d at 1065. Tomlinson stated that she did not know what was in the statute. She relied on both the company's Workbook and Bankruptcy Overview as the sole sources of interpretation of what she should include in her bankruptcy petition. She further relied on the bankruptcy petition preparer's application of the information from the Workbook to the bankruptcy forms. Hr'g Tr. 62–64, Apr. 11, 2005.

This application of the information provided in the Workbook to her forms clearly constitutes providing specific legal advice to an individual, which violates both the code and New York's prohibition against the unauthorized practice of law. *In re Gaftick*, 333 B.R. at 186 (holding that the unauthorized practice of law constitutes violation of code); *Sussman v. Grado*, 192 Misc.2d at 633, 746 N.Y.S.2d at 553 ("[W]hen legal documents are prepared for a layman by a person in the business of preparing such documents, that person is practicing law whether the documents be prepared in conformity with the law of New York or any other law.") (quoting *In re Roel*, 3 N.Y.2d 224, 165 N.Y.S.2d 31, 144 N.E.2d 24 (1957), app. dismissed, 355 U.S. 604, 78 S.Ct. 535, 2 L.Ed.2d 524 (1958)).

The bankruptcy court's determination that the Workbook and Bankruptcy Overview violated the statute is upheld.

**c. Statements denying the provision of legal advice**

The next issue is whether the bankruptcy petition preparers violated the statute by representing that they were not giving legal advice when they were doing so. As discussed in the above determinations, the bankruptcy petition preparers did give legal advice through Thomas and by analyzing Tomlinson's Workbook, then incorporating the answers into her bankruptcy forms. Furthermore, in the Bankruptcy Overview and in Tomlinson's contract, defendants represented that their actions were not legal advice. *See* Bankruptcy Overview, at 2 ("We The People cannot provide legal or financial advice."); Bankruptcy Documentation Agreement, Resp't's Ex. C ("I also understand that the owners and employees are not attorneys and are prohibited from giving legal advice."). The bankruptcy court's determination that these representations were false and misleading and violated the statute is, therefore, upheld.

**d. Hidden Charges**

The final decisions of law by the bankruptcy court involve the amount of money that Tomlinson was charged for We the People's services. The bankruptcy court found three violations of the statute in that the bankruptcy petition preparers: (1) charged for a process server when none was needed; (2) advertised a $199 fee when the fee was in fact $229; and (3) provided misleading materials that falsely stated that the fee over $199 was optional. The bankruptcy court made these determinations based on Tomlinson's testimony, which it determined to be credible. The bankruptcy petition preparers have not

shown that the factual findings are clearly erroneous. *See In re Dawnwood Properties/78*, 209 F.3d at 116; *In re Casse*, 198 F.3d at 332. Based on these unrefuted factual findings, it is clear that the additional charges were a deceptive practice under the statute.

### e. Jurisdiction over We the People USA

We the People USA has also argued that it was not a party before the bankruptcy court in this matter because the motion was served on "We the People" at the address for We the People—Brooklyn, with no service to We the People USA. It further argues that during the first hearing, its attorney only represented We the People USA in that he represented witnesses who were employees of the franchiser.

We the People USA's arguments are disingenuous. The facts indicate that it was properly before the bankruptcy court.

■ We the People USA claims that the bankruptcy court did not have jurisdiction over it because of lack of proper service. A debtor or trustee may charge a bankruptcy petition preparer with a violation of 11 U.S.C. § 110 by either a core proceeding, or if injunctive relief is sought through an adversary proceeding. In *re Ali*, 230 B.R. 477, *479 (Bankr.E.D.N.Y.1999) (finding jurisdiction as a core proceeding because the case dealt with "administration of the estate"); *In re McDonald*, 318 B.R. 37, 48 (Bankr.E.D.N.Y.2004) (denying injunctive relief because an adversary proceeding had not been filed). The debtor and trustees papers did not seek injunctive relief; nor did they specifically state whether they intended to file an adversary or core proceeding. In either case, jurisdiction has been achieved.

For adversary proceedings, the defendant waives the defense of lack of jurisdiction if it is omitted from its reply motions or responsive pleadings. Fed. R. Bankr.P. 7001(1) (incorporating Fed.R.Civ.P. 12(b)(h)). At the first hearing, We the People USA's attorney stated that he represented both the franchiser and the franchisee, giving the full name of each. He made arguments on behalf of each entity during that hearing and the subsequent hearing. These arguments effectively waived the defense.

Furthermore, if this case were viewed as a core proceeding, We the People USA put itself within the jurisdiction of the bankruptcy court by listing itself as a paid creditor on Tomlinson's statement of financial affairs as having received payments in relation to the bankruptcy. Resp't's Ex. B. We the People USA did not present any arguments that this was a non-core proceeding. Fed. R. Bankr.P.R. 7012(1)(b). It also failed to object to lack of service of the motion.

■ Regardless of the type of proceeding, We the People USA completely failed to preserve a jurisdictional argument. In the March 15, 2005 order, the bankruptcy court determined that "the Joint Motion of Trustee and Debtor was duly served and provided Petition Preparers with due notice of the Joint Motion." In the next paragraph, the court included We the People USA in the list of Petition Preparers. Despite the fact that the same attorney represents both entities, We the People USA did not file an objection to this order.

We the People USA was properly before the bankruptcy court. Its request to be dismissed from the suit is denied.

### f. Fines, damages and attorneys' fees

Defendants have argued that the fines, damages and attorneys' fees that Tomlinson and the trustee request are excessive. Tomlinson and the trustee have requested $2000 for each deceptive act under 11

U.S.C. § 110(i)(1)(B)(i); $1000 for each deceptive act under 11 U.S.C. § 110(i)(2); damages in the amount of $420 because Tomlinson had to take time off work to attend the court hearings and a deposition; and attorney fees for the trustee in the amount of $16,692.50 and for the debtor's attorney in the amount of $3,240.

### i. Fines

■ Damages and fines paid to the debtor and trustee are regulated under 11 U.S.C. § 110(i). The relevant portion of the code states:

> [I]f a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act ... the district court, on the motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—
>
> (A) the debtor's actual damages;
>
> (B) the greater of—
>
> (i) $2,000; or
>
> (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
>
> (C) reasonable attorneys' fees and costs in moving for damages under this subsection.
>
> (2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

11 U.S.C. § 110(i). Both sides agree that the "shall" used throughout this section is mandatory, meaning that if the court determines there has been a fraudulent, unfair or deceptive act that it must order damages, attorneys' fees and the statutory amount. In this case, since the debtor paid $229 for the preparation services, $2,000 is the greater amount.

The parties differ as to whether the $2,000 to the debtor and $1,000 to the trustee should be paid for *each* violation of the statute, or if the fine is only applicable once in the bankruptcy case.

Multiple fines have been awarded for violations of a different section of the statute. *See In re France,* 271 B.R. 748, 757 (Bankr.E.D.N.Y.2002) (fining bankruptcy petition preparer $500 for each violation under 11 U.S.C. § 110(b)). However, there are several differences between the sections like 110(b), and section 110(i), the section at hand. Under section 110(b), the bankruptcy court has discretion whether to award the fine, unlike the mandatory fine under 110(i) which is awarded by the district court. The fines under 110(b) are $500 rather than the larger fines of $1000 and $2000 under 110(i). The statute also specifically states that the $500 fines may be awarded for each violation of that section. *See* 11 U.S.C. § 110(b)(2), (c)(2), (d)(2), (f)(2), (g)(2) (creating fines for various violations and noting that the bankruptcy petition preparer "may be fined not more than $500 for each such" violation). Section 110(i), however, does not use the often repeated language "each such violation" and assesses a higher fine of $2,000 to the debtor and $1,000 to the trustee. Furthermore, the type of violation at stake for the $500 fine is clearly defined. For example, bankruptcy petition preparers may be fined up to $500 for failing to list themselves and sign each document filed with the bankruptcy court. In contrast, a violation of Section 110(i) can be for "any fraudulent, unfair, or deceptive act" which is left undefined.

Case law has not instructed how to interpret the differences in these sections of the statute. Defendants' reliance on *In re Fish,* 210 B.R. 603 (Bankr.D.Colo.1997) is

not dispositive because it did not squarely address the question of whether multiple fines should be awarded for multiple violations. In that case, the bankruptcy court merely found that the $2000 fine was greater than the cost of the service, rather than finding that only one fine was available as defendants suggest. The defendants' only other authority, *Rittenhouse v. Delta Home Improvement, Inc.*, 255 B.R. 294 (W.D.Mich.2000), also did not squarely address the issue of whether multiple fines should be assessed and rather dealt with only one violation under section 110(i), which was subsequently overturned on appeal. *In re Desilets*, 291 F.3d 925 (6th Cir.2002) (reversing bankruptcy and district courts' finding of unauthorized practice of law).

Bankruptcy courts routinely do certify to the district court multiple violations of Section 110(i). See *In re Gaftick*, 333 B.R. 177 (Bankr.E.D.N.Y.2005). However, certifying several violations makes logical sense regardless of whether multiple or single fines are issued in each case. Under the version of the statute applicable here, the role of the bankruptcy court is not to impose the fine, but merely determine if a violation has occurred. It is reasonable for bankruptcy courts to certify multiple violations if they are present because if the district court were to disagree as to the validity of one violation, it could still consider the other violations in order to determine if the sanction should be imposed. Therefore, the fact that bankruptcy courts issue certification for multiple violations does not determine that multiple fines should be issued.

With no cases on point, the statutory text must guide the analysis. The relevant section of the statute states that the district court "shall order" payment of "the greater of (i) $2,000; or (ii) twice the amount paid by the debtor to the bank-

ruptcy petition preparer for the preparer's services" if the bankruptcy petition preparer "commits any fraudulent, unfair, or deceptive act." 11 U.S.C. § 110(h). The word "any" implies that the preparer could violate the statute several times and face the same penalty; the words "greater of" clearly limit the full amount that can be awarded. Based on this analysis, the statutory text clearly allows only one fine per case, rather than for each violation.

This reading comports with the need for a balance of policy concerns in the regulation of bankruptcy petition preparers. The statute was passed to regulate bankruptcy petition preparers because they had often taken advantage of their clients, who were frequently in a very vulnerable position. *Doser*, 412 F.3d at 1061 (citing 140 Cong. Rec. H10,770). On the other hand, Congress did not decide to forbid bankruptcy petition preparers from providing any services. If a bankruptcy petition preparer properly charges for its work as a mere typing service and does not engage in the practices prohibited by the act, it can provide an economical service for those debtors with simple petitions.

Furthermore, if the bankruptcy petition preparer were fined for every "fraudulent, unfair, or deceptive act[ ]," they could easily be put out of business. As previously noted, the violations of sections 110(b)-(h) which result in $500 fines are clearly defined. The forbidden acts under section 110(i) are not specifically defined by the statute. A single case could involve one or fifty fraudulent, unfair or deceptive acts depending on how narrowly they were defined. The risk of one petition resulting in a high number of fines would either foreclose bankruptcy petition preparers from doing business, or at minimum increase the cost of preparing the petitions themselves, as self-insurance against the possibility of such high fines.

Even without multiple fines, both the debtor and the trustee have sufficient protections and incentives to prosecute violations of the code. The debtor is protected by section 110(i)(1), which requires that the preparer pay the debtor the actual damages resulting from a violation of the statute. This remedy satisfies the debtor because regardless of the number of fraudulent or deceptive acts the debtor only suffers one harm: the damage to his or her petition. Both the trustee and the debtor are also entitled to attorneys' fees. These protections lessen the need for the fines to be multiplied by the number of violations.

### (ii) Damages and Attorney's Fees

The trustee has petitioned for $16,692.50 in attorney's fees based on 35 hours of paralegal time and 15.5 hours of attorney time. The debtor also seeks attorney's fees in the amount of $3,240 for 8.1 hours of work at $400 per hour. The debtor also seeks compensation for each of four days that she had to take off of work related to the hearings, including one day for this motion, for a total of $420.

The bankruptcy petition preparers have argued that the fees are excessive, in part because they are out of proportion to the amount in fines that either the debtor or trustee will receive. They further argue that the debtor should not receive attorney's fees because her attorney never filed a notice of appearance. They also argued that the trustee should not receive fees because he improperly represented the debtor before the bankruptcy court by drafting the joint motion. Finally, they have argued that neither attorney should receive attorneys' fees based on work before the district court.

These arguments are not persuasive. The debtor's attorney appeared at her deposition and then represented her before both the bankruptcy court and the district court. While the defendants argued his work was duplicative of the trustee, this contradicts their earlier argument the trustee was overstepping his duties and representing the debtor. The debtor was entitled to her own attorney. He is entitled to his full request of attorney's fees.

The trustee properly represented the estate and properly brought this action under the statute. None of the defendants' arguments justify denying him the fees that he earned.

The bankruptcy petition preparers are directed to pay $16,692.50 in attorney's fees to the trustee and $3,240 to the debtor's attorney.

The bankruptcy petition preparers are also directed to compensate the debtor for taking off work in the amount of $420.

### Conclusion

The bankruptcy court's decisions of law and fact are affirmed. The bankruptcy petition preparers are directed to pay $2,000 to the debtor and $1,000 to the trustee in statutory fines. In addition, they shall pay the debtor $420 in damages, and the attorneys' fees listed above in the opinion.

SO ORDERED.